MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO APPLICATION OF SENATE PERMANENT SUBCOMMITTEE
ON INVESTIGATIONS TO ENFORCE SUBPOENA DUCES TECUM

# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS,<br><br>    Applicant,<br><br>v.<br><br>CARL FERRER,<br><br>    Respondent. | Misc. No. 1:16-mc-00621-RMC |

**DECLARATION OF STEVEN ROSS IN SUPPORT OF CARL FERRER'S OPPOSITION TO APPLICATION OF SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS TO ENFORCE SUBPOENA DUCES TECUM**

I, Steven R. Ross, declare:

1. I am an attorney at Akin Gump Strauss Hauer & Feld LLP and counsel of record to Carl Ferrer, in his capacity as Chief Executive Officer of Backpage.com, LLC ("Backpage"). I have personal knowledge of and am competent to testify to the facts in this Declaration.

2. On June 19, 2015, I attended a voluntary briefing provided to staff of the Permanent Subcommittee on Investigations (the "Subcommittee") by Backpage General Counsel Liz McDougall. At the more-than-five-hour briefing, Ms. McDougall provided extensive information regarding more than a dozen topics, including Backpage's efforts to combat human trafficking and child exploitation, and specific information related to Backpage's moderation processes.

3. On July 7, 2015, the Subcommittee issued to Backpage its first expansive document subpoena. The subpoena requested 41 categories of documents, and many of the 41 requests also contained sub-parts (as many as nine for a single request) and additional requests. The vast majority of the requests appear to be unrelated to the issues of human trafficking.

4. On July 16, 2015, along with co-counsel, I met with Subcommittee staff to discuss the Subcommittee's July 7, 2016 subpoena to Backpage. At that meeting, we raised First Amendment concerns regarding the scope of the Subcommittee's inquiry. Subcommittee Counsel acknowledged awareness of the ongoing efforts of Cook County, Illinois Sherriff Thomas Dart against Backpage. When I raised a concern regarding the potential that there was some connection between the two investigations, Subcommittee Counsel strongly denied any connection between the Subcommittee's inquiry and the actions of Sheriff Dart.

5. On August 28, 2015, I received a letter from the Subcommittee decrying Backpage's "unfounded and irresponsible claim that [the] investigation is 'related to—and indeed connected with—recent explicit efforts by other governmental actors to halt Backpage.com's business." The Subcommittee affirmed that the "allegation is false."

6. On September 14, 2015, co-counsel and I again met with Subcommittee staff to discuss its ongoing investigation of Backpage, our concerns regarding the constitutional infirmities of the targeted inquiry, and our belief that the First Amendment issues regarding compelled disclosure from an internet intermediary were a matter appropriate for judicial

review. At that meeting, Subcommittee staff again represented that its inquiry was in no way connected or related to Sheriff Dart's and other legal actions against Backpage.

7. On November 13, 2016, I submitted to the Subcommittee what was intended to be a first production of documents in response to the Subcommittee's October 1, 2015 subpoena. Following the production of more than 16,000 pages, I received a call from Subcommittee staff who expressed dismay at the size of the submission. In particular, the staff expressed incredulity that Backpage had not turned over its employee moderators' internal emails; Subcommittee staff said that third-party witnesses had provided "thousands" of such documents. When asked if the Subcommittee understood its subpoena to call for the full email collections of all Backpage employees whose jobs involve moderating ads—a staff that has, at times, included more than 100 employees—the staff indicated that yes, all of those emails, if they had anything at all to do with moderating ads, were called for by the subpoena. I informed the Subcommittee staff that Backpage was preparing to submit millions more pages in response to the subpoena's request regarding human trafficking.

8. In addition to the subpoenas issued to Backpage and Carl Ferrer, I am aware that the Subcommittee has issued subpoenas and/or requested information regarding Backpage from at least 15 different entities and/or individuals. These include current and former Backpage employees, an accounting firm, a payroll processor, an internet service provider, and multiple other corporate and financial entities that have done business with Backpage. The first subpoenas to Backpage employees were issued on August 13, 2015.

9. I am aware that the Subcommittee has expressed its intention to ask individuals how they "feel" about working for a company like Backpage. I am aware that

the Subcommittee, as of April 20, 2016, continues to demand the personal appearance before the Subcommittee of three non-executive Backpage employees whose job functions include the very moderation process that is at the heart of the matter now before this Court.

10. I am aware that the Subcommittee issued at least two subpoenas to an accounting firm for Backpage related documents. I am aware that these subpoenas requested financial information far beyond the scope of the financial information requested in the Subcommittee's October 1, 2015 subpoena to Backpage.

11. In addition, I am aware the Subcommittee has contacted employees at their homes, and Subcommittee Counsel has contacted at least three current and/or former Backpage employees through their personal Facebook.com accounts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of April 2016.



Steven R. Ross