IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS, )<br>)<br>Applicant, )<br>)<br>v. )<br>)<br>CARL FERRER, )<br>)<br>Respondent. )<br>)<br>) | Misc. No. 1:16-mc-00621-RMC |

**RESPONDENT'S CORRECTED SURREPLY**

Respondent submits and asks the Court to accept this surreply on two limited issues: *first*, the Subcommittee's reference to and reliance on certain allegations of Cook County Sheriff Dart that are belied by the documentary record in that case, and *second*, regarding recent congressional efforts to pursue and investigate other online publishers, underscoring the threats to First Amendment interests presented in this case.

    A.    **The Subcommittee's Latest Attempt to Justify Its Investigation Based on Allegations of Sheriff Dart.**

Backpage.com showed before that the Subcommittee has been coordinating with Sheriff Dart and his attempts to shut down Backpage.com, notwithstanding the Subcommittee's denials that it had been in contact or working with the Sheriff's office. *See, e.g.*, Mem. of P. & A. in Opp'n to Appl. of Senate Permanent Subcomm. on Investigations to Enforce Subpoena Duces Tecum at 19, 38. Yet, in its reply, the Subcommittee again adopts and advances accusations made by Sheriff Dart, urging the Court to accept them to show that

Backpage.com's moderation policies and practices are intended "to conceal illegal activity" and therefore are not "editorial decisions" subject to First Amendment protection. Reply Mem. of P. & A.' in Support of Appl. (hereinafter "Reply Mem.") at 13-15.

The Subcommittee asks this Court to give considerable weight to certain allegations in a motion recently filed in another case by Sheriff Dart in support of this argument. However, the Subcommittee's allusions to Sheriff Dart's recent brief are incomplete and deceptive, because they rely solely on Sheriff Dart's accusations but not the record in that case. Thus, Respondent is providing its response to Sheriff's Dart's recent motion, including the documents from Sheriff Dart's files that contradict his accusations. Backpage.com's Opposition to Sheriff Dart's Motion for Leave to Amend Affirmative Defenses, filed May 17, 2016, ECF No. 160, *Backpage.com v. Dart*, No. 1:15-cv-06340 (N.D. Ill.), attached hereto as Ex. A (hereinafter, "Backpage.com's Opp'n to Mot. for Leave to Am.").

In fact, the record reflects that four years ago an investigator from Sheriff Dart's office posted a fake ad on Backpage.com and then edited it to include underage references in an effort to evade Backpage.com's screening.[1] His effort failed; the ad was flagged and

---

[1] *See* Backpage.com's Opp'n to Mot. for Leave to Am. at 3-6. The investigator's report states that the ad "was posted by the website with changes that R/I [apparently, the investigator] did not make." *See* Cook Cty. Sheriff's Police Dep't Supp. Report dated May 9, 2012 at 3, attached hereto as Ex. B. However, the screenshots he printed out and attached to the report reflect that the earliest version of the ad posted on the website was titled "Red beauty – 18" and contained no underage references. *See* Backpage.com Advert. Red beauty – 18, attached hereto as Ex. C. The investigator's report also reflects that, shortly after the original advertisement appeared on the site, *he* edited the ad to put in the offending terms, *see* Ex. B, so that the ad that ran was not some version "scrubbed" by Backpage.com. *See* Backpage.com Advert. Red beauty 14 - 18, attached hereto as Ex. D. The screen shots printed out by the investigator and appended to his report do not reflect that Backpage.com made any changes to the ad.

Backpage.com *voluntarily* reported it to the National Center for Missing and Exploited Children ("NCMEC"). *See* Backpage.com's Opp'n to Mot. for Leave to Am. at 3-6. Far from proving that Backpage.com took steps "to conceal illegal activity," as the Subcommittee asserts (parroting Sheriff Dart's unsupported accusations), Reply Mem. at 15, the record shows Backpage.com reported the ad for referral to law enforcement to *prevent* illegal conduct. Indeed, after NCMEC expended time and resources investigating the ad believing it was real and presented a possible incident of exploitation (making referrals to the Chicago FBI and the Cook County State's Attorney's Office), Sheriff Dart's office admitted that the ad was "bogus" and just "[s]omeone goofing around." *See* E-mails from William Leen, Cook Cty. Sheriff's Office to Louis Longhitano, Assistant State Attorney, Cook Cty. State's Attorney (May 11, 2012, 1:27 and 1:31 PM EST), attached hereto as Ex. E.

The Subcommittee now presents Sheriff Dart's accusations and mischaracterizations to this Court as supposedly showing Backpage.com's screening and moderation are not valid "editorial decisions," and, instead, Mr. Ferrer must show "why they are constitutionally protected." *See* Reply Mem. at 14, 15. But the law is clear that choices made by online intermediaries about third-party content are editorial decisions protected by the First Amendment.[2] The Subcommittee's argument based on Sheriff Dart's "bogus" ad posted by "[s]omeone fooling around" misstates both the facts and the law, and this Court should not

---

[2] *See, e.g., Jian Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 438 (S.D.N.Y. 2014) ("[A] 'search engine's editorial judgment is much like many familiar editorial judgments,' such as the newspaper editor's judgment of which wire-service stories to run and where to place them in the newspaper, the guidebook writer's judgments about which attractions to mention and how to display them, and Matt Drudge's judgments about which stories to link and how prominently to feature them") (citation omitted); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) and finding the First Amendment applies to editorial selections of search engines).

accept the accusations of Sheriff Dart—now repeated by the Subcommittee—as though they are facts and without regard to the actual record.

### B. The First Amendment Threat Posed by Overreaching Congressional Investigations of Online Providers.

The threats to First Amendment interests posed by the Subcommittee's subpoena in this case are underscored by another recent congressional effort seeking to investigate an online publisher for editorial decisions that some members of Congress do not like.

On May 10, 2016, the Senate Committee on Commerce, Science, and Transportation launched an investigation about Facebook's "Trending Topics" section, based on press accounts that Facebook had selectively chosen not to feature content concerning conservative views. *See* Letter from Sen. John Thune, Chairman of Comm. on Commerce, Science, and Transportation to Mark Zuckerberg, Chairman & CEO, Facebook (May 10, 2016), attached hereto as Exhibit F. Legal scholars and the press noted that the Senate's purported investigation is an improper infringement on Facebook's First Amendment rights. *See, e.g.,* Nick Corosaniti and Mike Isaac, *Senator Demands Answers From Facebook on Claims of 'Trending' List Bias*, N.Y. TIMES, May 10, 2016 (citing First Amendment scholar Floyd Abrams that "[t]he notion of Congress looking into or investigating how a medium of communication decides what to say threatens on its face First Amendment rights"), attached hereto as Ex. G; Peter Scheer, *Facebook, under attack for choosing "trending" stories, should embrace the 1st Amendment*, First Amendment Coalition (May 11, 2016), *available at* https://firstamendmentcoalition.org/2016/05/facebook-attack-choosing-trending-stories-embrace-1st-amendment/ ("Congress has no more power to inquire into Facebook's decision-making in this area than to second-guess the editorial judgments of the New York

Times or Medium.com. Congress can kick and scream all it wants (free speech being a two-way street), but it cannot interrogate Facebook, much less dictate its own editorial preferences. The First Amendment vests all editorial authority in Facebook."), attached hereto as Ex. H; Charles C.W. Cooke, *The Senate Should Leave Facebook Alone*, NAT'L REV., May 10, 2016, ("By demanding that Facebook account for itself, Senator Thune is ultimately claiming the power to investigate any online service that is even tangentially involved with the dissemination of news. In addition to representing a clear violation of the First Amendment, this sets a dangerous and undesirable precedent — one that conservatives would usually avoid at all costs. Mistake."), attached hereto as Ex. I.

The Court can and should take judicial notice of this most recent congressional attempt to infringe speech through exercise of investigatory powers.

Respectfully submitted,

[signature]

Steven R. Ross, Bar #244863
Stanley M. Brand, Bar #213082
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone: (202) 887-4343

Robert Corn-Revere, Bar #375415
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200

Counsel for Carl Ferrer

# EXHIBITS LIST

| | |
|---|---|
| Exhibit A | Backpage.com's Opposition to Sheriff Dart's Motion for Leave to Amend Affirmative Defenses, filed May 17, 2016, ECF No. 160, Backpage.com v. Dart, No. 1:15-cv-06340 (N.D. Ill.) |
| Exhibit B | Cook County Sheriff's Police Department Supplemental Report dated May 9, 2012 |
| Exhibit C | Backpage.com Advertisement Red beauty – 18 |
| Exhibit D | Backpage.com Advertisement Red beauty 14 – 18 |
| Exhibit E | E-mails from William Leen, Cook County Sheriff's Office to Louis Longhitano, Supervisor, Assistant State Attorney, Cook County State's Attorney (May 11, 2012, 1:27 and 1:31 PM EST) |
| Exhibit F | Letter from Sen. John Thune, Chairman of Comm. on Commerce, Science, and Transportation to Mark Zuckerberg, Chairman & CEO, Facebook, May 10, 2016 |
| Exhibit G | *Senator Demands Answers From Facebook on Claims of 'Trending' List Bias*, N.Y. TIMES, May 10, 2016 |
| Exhibit H | Peter Scheer, *Facebook, under attack for choosing "trending" stories, should embrace the 1st Amendment*, First Amendment Coalition, May 11, 2016 |
| Exhibit I | *The Senate Should Leave Facebook Alone*, NAT'L. REV., May 10, 2016 |